UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JAYSON WOOLLEY,

                        Plaintiff,

                -against-

COUNTY OF NASSAU, NASSAU COUNTY DISTRICT
ATTORNEY, NASSAU COUNTY POLICE
DEPARTMENT, and OFFICER MICHAEL A. LASALA,

                       Defendants.
-----------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
24-cv-01225 (JMA)(SIL)

FILED
CLERK

4/17/2025 1:03 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Pro se Plaintiff Jayson Woolley brings this civil rights action arising from alleged encounters between Plaintiff and the Nassau County Police Department ("NCPD") between January 2019 and October 2023. (See generally, Compl., ECF No. 1.) Presently before the Court is the motion by Defendants to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 43.) As set forth below, the motion is GRANTED.

## I. BACKGROUND

### A. Facts

The facts set forth herein are taken from the Complaint and from Plaintiff's pro se opposition to the instant motion. See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013); Romain v. State Farm Fire & Cas. Co., 639 F. Supp. 3d 416, 421 n.4 (E.D.N.Y. 2022). Plaintiff's Complaint details several miscellaneous encounters with the NCPD from January 2019 to October 2023. (See generally, Compl.) The relevant facts from each encounter are recounted in chronological order below.

    1. January 2, 2019

On or about January 2, 2019, Plaintiff sought assistance from the NCPD "in conducting periodic welfare checks" on Plaintiff's parents, due to his increasing concern about their "mental

health and general welfare." (Id. ¶ 5.)  Plaintiff sought to speak with one Commander Pelera and one Officer Dettieri but was "requested to leave the precinct by Officer Dettieri." (Id.)

### 2. February 23, 2019

On or about February 23, 2019, Plaintiff alleges that he was present during a "child abuse incident." (Id. ¶ 6.)  Plaintiff claims that Police Officer Thomas Goodrich and another unidentified police officer responded to the scene. (Id.)  Plaintiff then claims that the officers "covered up the incident by completing and filing a false police report naming Plaintiff, Jayson Woolley, as the victim . . ." (Id.)  Plaintiff maintains that he was not the victim, and that the officers accepted this false report to "cover up this incident." (Id.)  Plaintiff asserts, upon information and belief, that the police report has never been corrected. (Id. ¶ 7.)

### 3. October 17, 2019

On or about October 17, 2019, Plaintiff attempted to travel to 640 West Carl Avenue, Baldwin, New York, Plaintiff's family home. (Id. ¶ 8.)  Plaintiff asserts that three police officers appeared and "impeded [his] access to the house." (Id.)  The officers then made Plaintiff wait outside for an hour and a half. (Id.)  According to Plaintiff, the officers "told him he would have to wait for them to serve him with an Order of Protection barring him from the premises at 640 West Carl Avenue." (Id.)

### 4. September 7, 2022

On or about September 7, 2022, Plaintiff claims that he was assaulted by his sister Trina Wrobel at his home at 640 West Carl Avenue by "smacking a telephone out of Plaintiff's hands." (Id. ¶ 9.)  Ms. Wrobel then called the NCPD and "falsely reported that Plaintiff assaulted her." (Id.)  Plaintiff claims the incident was captured on video. (Id.)  Defendant Officer Michael A. LaSala reported to the scene, and Plaintiff claims that he subsequently "filed a false incident report

indicating that Plaintiff had assaulted Trina Wrobel instead of the fact – as recorded on video – that Trina Wrobel assaulted Plaintiff." (Id.)  Plaintiff avers that this "narrative would become the basis for the subsequent false arrest of Plaintiff." (Id.)

     5. <u>November 16/17, 2022</u>

On November 16 or November 17, Plaintiff asserts that he was "falsely arrested at 640 West Carl Avenue." (Id. ¶ 10.)  Officer LaSala was present at the arrest. (Id.)  Plaintiff was charged with trespass in violation of New York Penal Code 140.05. (Id.)  For approximately one hour, Officer LaSala attempted to have Plaintiff's mother sign a document that "purported to state she did not want her son at the home." (Id.)  Plaintiff was then handcuffed and transported to the NCPD First District station. (Id.)  Plaintiff requested his prescribed medication for Adderall, and then claims that "an additional false charge of criminal possession of a controlled substance in the 7th degree was then filed against the Plaintiff." (Id.)  Plaintiff states that he "was further humiliated by being sent to the hospital after officers implied that he was mentally ill." (Id.)  Plaintiff alleges that the charges were ultimately dismissed with prejudice on or about February 7, 2023. (Id.)

     6. <u>August 31, 2023</u>

On or about August 31, 2023, Plaintiff returned to his home at 640 West Carl Avenue and found that his mother was incapacitated. (Id. ¶ 11.)  Plaintiff called 911 to request an ambulance (Id.)  The NCPD responded with 5 officers, including one Sergeant Bambino.  Trina Wrobel then "falsely stated to the police that Plaintiff was not permitted on the premises…" (Id.)  The NCPD then "barred Plaintiff from reentering his residence and forced him to leave on Plaintiff's moped." (Id.)

7. September 2, 2023

On or about September 2, 2023, Plaintiff was stopped by the NCPD while driving his moped and "given 10 citations." (Id. ¶ 12.) According to Plaintiff, the NCPD "sought to harass Plaintiff" by directing him to drive his moped despite their erroneous belief that his license was suspended. (Id.) Subsequently, Plaintiff asserts that the 10 citations were dismissed for "failure of proof." (Id.)

8. October 20, 2023

On or about October 20, 2023, the NCPD arrived at the residence at 640 West Carl Avenue. (Id. ¶ 13.) One Sergeant Erb of the NCPD "instructed Plaintiff to leave the premises or he would be arrested." (Id.)

**B. Procedural History**

On February 15, 2024, Plaintiff commenced this case by filing his pro se Complaint against the County of Nassau, Nassau County District Attorney, NCPD, and Officer Michael A. LaSala seeking damages. (See Compl., ECF No. 1.) Plaintiff asserts claims under 42 U.S.C. § 1983 ("Section 1983") for violations of his First, Fourth, and Fourteenth Amendment rights. (Compl. ¶ 1; Pl's Opp'n, ECF No. 43-1 at 3.) Plaintiff also asserts a claim under Section 1983 for liability under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); and causes of action "upon common law claims in tort." (Compl. ¶ 1; Pl's Opp'n at 4.)

All Defendants were not served with the Complaint until April 23, 2024, after the Court provided several warnings to Plaintiff that failure to effectuate service would lead to dismissal of the action. (See March 4, 2024 Order; April 4, 2024 Order.) On June 7, 2024, Defendants moved the Court for a pre-motion conference to dismiss the Complaint. (ECF No. 16). Plaintiff, however, then requested to amend his Complaint. (ECF No. 18). Because Plaintiff intended to amend the

4

Complaint, the Court denied Defendants' motion as moot and directed Plaintiff to file his amended Complaint by July 8, 2024. (June 10, 2024 Order.) Plaintiff failed to amend the Complaint by that date and made an untimely request to extend the deadline. (ECF No. 22.) Despite this failure, the Court provided Plaintiff an extension until August 7, 2024 to amend his Complaint. (July 30, 2024 Order). The Court warned Plaintiff that "failure to file an Amended Complaint by that deadline will lead the Court to grant Defendants permission to move for dismissal." (Id.) Plaintiff once again failed to amend the Complaint by the Court's deadline, and again made an untimely request for an extension. (ECF No. 29.) The Court denied that request and directed the parties to file a joint proposed briefing schedule for the anticipated motion to dismiss. (August 8, 2024 Order). On January 16, 2025, Defendants filed the fully briefed motion to dismiss. (ECF No. 43.)[1]

## II.     LEGAL STANDARDS

### A. <u>Failure to State a Claim</u>

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). Courts evaluate motions under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). That standard requires the Court to accept as true all well-pled factual allegations in the Amended Complaint and consider documents attached to the Amended Complaint, documents incorporated by reference in or integral to that pleading, and matters of which the Court may take judicial notice. E.g., Clark, 89 F.4th at 93. While the Court

---

[1] On March 14, 2025, nearly two months after the instant motion to dismiss was filed, Plaintiff made another request to amend his Complaint. (See ECF No. 51.) The Court denied that motion as well. (See Apr. 2, 2025 Order.) On April 9, 2025, Plaintiff filed two more letters. (See ECF No. 54; ECF No. 55.) To the extent that Plaintiff requests any relief in those letters, any such requests are denied.

5

accepts Plaintiff's well-pled allegations as true, the Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements. See Shara v. Maine-Endwell Cent. Sch. Dist., 46 F.4th 77, 82 (2d Cir. 2022). To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 664; see also id. at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Determining whether the Amended Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 664.

### B. Section 1983

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see 42 U.S.C. § 1983. "§ 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." Morris-Hayes v. Bd. of Educ., 423 F.3d 153, 159 (2d Cir. 2005); see Moroughan v. Cnty. of Suffolk, 514 F. Supp. 3d 479, 511 (E.D.N.Y. 2021) (similar). Accordingly, "[t]he factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and alterations omitted); see Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed.").

To "establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). To do so, "a plaintiff must plead

6

and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti, 983 F.3d at 618 (quoting Iqbal, 556 U.S. at 676).

A Monell claim concerns municipal liability under Section 1983. "Monell expressly prohibits *respondeat superior* liability for municipalities . . . meaning that a plaintiff must demonstrate that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 97-98 (2d Cir. 2020) (quoting Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). "The elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Id. at 97; see Frost v. New York City Police Dep't, 980 F.3d 231, 257 (2d Cir. 2020).

### C. Plaintiff's Pro Se Status

"Where, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks omitted). This policy is "driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." McLeod v. Jewish Guild For The Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted).

"Nonetheless, a pro se complaint must state a plausible claim for relief." Meadows v. United Servs., 963 F.3d 240, 243 (2d Cir. 2020) (quoting Hogan, 738 F.3d at 515). That is,

7

"dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." Temple v. Hudson View Owners Corp., 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (citing Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997)); see Williams v. Richardson, 425 F. Supp. 3d 191, 201 (S.D.N.Y. 2019) ("[T]he duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." (internal quotation marks omitted)). Ultimately, Plaintiff's pro se status "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." See e.g., United States v. Starling, 76 F.4th 92, 99 (2d Cir. 2023) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); Faretta v. California, 422 U.S. 806, 834 n.46 (1975) (similar).

## III. DISCUSSION

### A. Plaintiff's Section 1983 Claims Fail

As noted above, Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his First, Fourth, and Fourteenth Amendment rights. (See Compl. ¶ 1; Pl's Opp'n at 4.) Notwithstanding the bare-bones and conclusory nature of the Complaint, a liberal interpretation of pro se Plaintiff's Complaint allows the Court to identify two potential Section 1983 claims: (1) unlawful arrest and imprisonment, and (2) malicious prosecution. (See id.) For the following reasons, though, the Court finds that even under a liberal construal of Plaintiff's Complaint, there is not "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. 544 at 570.)

1. False Arrest and Imprisonment

"In analyzing claims alleging the constitutional tort of false arrest, '[courts] have generally looked to the law of the state in which the arrest occurred.'" Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007) (citing Jaegly v. Couch, 439 F.3d 149, 151–52 (2d Cir. 2006)); see also

8

Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest [or false imprisonment], resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.")

To state a claim of false arrest or unlawful imprisonment, a plaintiff must demonstrate that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of N.Y., 331 F.3d 63, 75 (2d Cir. 2003) (quotation omitted). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" Weyant, 101 F.3d at 852 (quotation omitted). Additionally, "to prevail on a Section 1983 claim against a particular defendant, the plaintiff must demonstrate the defendant's 'personal involvement' in the violation, which the Second Circuit has defined as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" Rhooms v. City of New York, No. 11CV5910, 2017 WL 1214430, at *5 (E.D.N.Y. Mar. 31, 2017) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001).

Here, Plaintiff's Complaint contains many superfluous details about encounters with the NCPD, where he alleges that the NCPD committed various misdeeds (or were present when such misdeeds were committed by third parties). (See generally, Compl.) (asserting that NCPD officers, inter alia, accepted "false police report[s]," "impeded Plaintiff's access to [his] house," and "interfere[d] with Plaintiff's ability to care for his incapacitated mother.") While the Court is sympathetic to these alleged plights, none rise to the level of a constitutional deprivation.

The only incident that even potentially implicates a constitutional violation is Plaintiff's

9

November 2022 arrest and subsequent prosecution.  (See, e.g., Pl's Opp'n at 3-4 (arguing that his November 2022 arrest establishes his false arrest and malicious prosecution claims); Def's Mem., ECF No. 43 at 10-12 (arguing that Plaintiff's only potential claims arise from the November 2022 arrest.))  With respect to this arrest, however, Plaintiff does not allege enough factual content to satisfy the criteria to state a plausible claim for false arrest and imprisonment.  Rather, Plaintiff relies on the conclusory claim that he "was falsely arrested at 640 W Carl Avenue." (Compl. ¶ 10.)  The Complaint alleges that Plaintiff "was charged with trespass in violation of New York Penal Code 140.05." (Id.)  Read liberally, the Court understands Plaintiff to mean that his arrest led to his confinement against his consent.

However, there is nothing in the Complaint that could demonstrate that Plaintiff's arrest was made "without justification." Weyant, 101 F.3d at 852.  The only fact Plaintiff alleges is that Officer LaSalla "sought [Plaintiff's mother's] signature on a document, not written by [her], that purported to state that she did not want her son at the home." (Compl. ¶ 10.)  It is unclear how this purported "attempted coercion" of Plaintiff's mother to sign this document could ground a claim for false arrest or imprisonment.  Even construing pro se Plaintiff's Complaint liberally, the Court cannot discern how attempting to procure this signature amounts to any misconduct, even assuming Plaintiff is correct that "Officer LaSala knew or should have known the statements contained therein were false." (Id.)  Plaintiff does not aver that Officer LaSala falsely created or filed the document, that the document was used as the basis for Plaintiff's arrest, or that his mother even signed the document.  Moreover, the threadbare description of the circumstances around the arrest renders it impossible for Defendants to determine whether a "defense of probable cause" is even appropriate. (Def's Mem. at 5.)  Thus, the Complaint does not contain sufficient factual matter to state a plausible claim for false arrest, and that claim must be dismissed.

10

### 2. Malicious Prosecution

For largely the same reasons described above, Plaintiff's claim for malicious prosecution fails. To state a malicious prosecution claim, "a plaintiff must show at least: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, and (3) the absence of probable cause for the criminal proceeding." Thompson v. Clark, No. 23-900-CV, 2024 WL 2720230, at *2 (2d Cir. May 28, 2024.)

Here as well, Plaintiff's Complaint does not contain sufficient factual matter to ground his claim for malicious prosecution. Of all the encounters with the NCPD, Plaintiff describes two that purportedly led to the initiation of criminal proceedings – the trespass arrest described above, and the citations Plaintiff received for riding his moped. (Compl. ¶ 10, 12.) Again, Plaintiff fails to allege that there was a lack of probable cause for either of these proceedings, rendering the Complaint defective with respect to this cause of action. See Homere v. Inc. Vill. of Hempstead, 322 F. Supp. 3d 353, 372 (E.D.N.Y. 2018) (dismissing malicious prosecution claim where "Plaintiffs fail[ed] to assert the absence of [] probable cause.") Instead, the Complaint is replete with conclusory allegations that Plaintiff was "improperly detained" and that the NCPD "sought to harass Plaintiff." (Compl. ¶ 12.) These allegations are little more than formulaic recitations of the claim's elements and need not be accepted as true. See, e.g., Bailey v. City of New York, 79 F. Supp. 3d 424, 450 (E.D.N.Y. 2015) ("Plaintiff cannot satisfy this burden 'with mere 'conjecture' and 'surmise' that [the] indictment was procured as a result of conduct undertaken by the defendants in bad faith.") (quoting Savino, 331 F.3d at 73.) Thus, Plaintiff's claims for malicious prosecution must also be dismissed for failure to state a claim.

### 3. Plaintiff's Monell Claims

Finally, Plaintiff's causes of action pursuant to Monell also fail. As stated above, "[t]he elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Agosto, 982 F.3d 86 at 97 (2d Cir. 2020).

First, Plaintiff does not allege that there is a municipal policy or custom involved in his string of encounters with the NCPD. In fact, the only mention of a municipal policy or custom is in Plaintiff's Opposition to the instant motion. (See Pl's Opp'n at 4.) There, Plaintiff states that "[d]iscovery is necessary to uncover the policies or customs that led to the constitutional violations alleged." (Id.) Such an argument, however, is unavailing. See, e.g., Villena v. NYC, No. 19-CV-601, 2019 WL 13545684, at *2 (E.D.N.Y. Feb. 1, 2019) ("Even construing all relevant factual allegations in the complaint in Plaintiff's favor, the complaint is devoid of any specific allegations that could lead to the inference that an official City policy or custom caused Plaintiff's alleged constitutional injuries."); Mendoza v. Cnty. of Nassau, No. 11-CV-02487, 2012 WL 4490539, at *6 (E.D.N.Y. Sept. 27, 2012) ("To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.") (citing Santos v. New York City, 847 F.Supp.2d 573, 576 (S.D.N.Y. 2012)). Because Plaintiff fails to allege any factual content whatsoever regarding a policy or custom in the County of Nassau or NCPD, Monell claims against these Defendants must be dismissed.

Second, even if there were enough factual content to plausibly allege a policy or custom, Plaintiff's Monell claim would fail on the merits for want of an underlying constitutional violation. See supra Sections A.1-2 (rejecting Plaintiff's constitutional causes of action); Goe v. Zucker, 43 F.4th 19, 34 (2d Cir. 2022) (affirming dismissal of Monell claim for lack of an underlying

12

constitutional violation by the individual defendants); Anilao v. Spota, 27 F.4th 855, 874 (2d Cir. 2022) (same).  Thus, Plaintiff's Monell claims must also be dismissed.

### B. Leave To Amend

The Court denies further leave to amend the Complaint.  "Although district courts generally grant pro se plaintiffs leave to amend a complaint, that leave may be denied when a plaintiff has already been given an opportunity to amend."  Zaerpour v. Bank of Am. Corp., No. 23-845, 2024 WL 2069555, at *2 (2d Cir. May 9, 2024) (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)).  Here, Plaintiff was given numerous opportunities to amend the original Complaint and has failed to do so.  (See June 10, 2024 Order; July 24, 2024 Order; August 8, 2024 Order.)  Thus, the Court denies leave for pro se Plaintiff to amend his Complaint.

## IV. CONCLUSION

For the reasons stated above, the Complaint is DISMISSED for failure to state a claim, and Plaintiff is denied leave to amend.

Though Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum & Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to close this case and mail a copy of this Memorandum & Order to Plaintiff at his address of record.

**SO ORDERED.**
 Dated:   April 17, 2025
          Central Islip, New York

                                                      /s/ (JMA)
                                              JOAN M. AZRACK
                                              UNITED STATES DISTRICT JUDGE